(February 24, 1904.)

## BEAR LAKE COUNTY v. BUDGE, JUDGE.

### [75 Pac. 614.]

APPLICATION FOR WRIT OF PROHIBITION—ACTIONS TO SETTLE PRIORITY TO USE OF WATER—SERVICE OF SUMMONS—CONSTRUCTIVE SERVICE THEREOF BY PUBLICATION—CONSTITUTIONAL LAW—DUE PROCESS OF LAW—POLICE POWER.

1. The provisions for the service of summons in actions brought under the provisions of an act entitled "An act to regulate the appropriation and diversion of the public waters and to establish rights to the use of such waters and the priority of such rights," approved March 11, 1903, *held*, unconstitutional and void.

2. The remedy by due course of law guaranteed by both the federal and state constitution requires, before there is a judicial determination affecting the right to life, liberty or property, that process to obtain jurisdiction must be issued and personally served when practicable; constructive service can only be made effective when actual service is impracticable.

3. Before constructive service of summons can be legally made some necessity therefor must appear.

4. That provision of section 13, article 1 of our state constitution which declares that no person shall be deprived of life, liberty or property without due process of law, prohibits the legislature from dispensing with personal service of summons in actions to quiet title or to settle private adverse rights to property

when personal service is practicable and is usual under the general laws of the state.

5. Under certain facts, constructive service of summons must, of necessity, be sufficient to give a court jurisdiction, and the general law of the state provides for such service.

6. The rule here laid down does not apply to cases of taxation.

7. The provisions of said sections 34, 35 and 36 of said act are repugnant to the provisions of section 26, article 5 of our state constitution which requires all laws relating to courts to be general and of uniform application, and that the organized judicial powers, proceedings and practices of courts of the same class shall be uniform.

8. The legislature has no authority to compel a county to pay the costs, disbursements and attorney's fees in an action to settle the right to the use of water and the priority of such rights between private parties, when such county is not properly a party to such action.

9. Under the police power of the state, the legislature cannot authorize a public officer to bring a suit to settle private rights to the use of water or the priority of such rights.

(Syllabus by the court.)

ORIGINAL application for writ of prohibition to restrain the judge of the Fifth Judicial District of Idaho, in and for Bear Lake County, from proceeding to try an action brought under the provisions of an act concerning the regulation of waters appropriated for a beneficial purpose, approved March 11, 1903. Writ granted.

John A. Bagley, Attorney General, James E. Babb, E. M. Wolfe and Jesse R. S. Budge, for Plaintiff.

In sections 4 and 5 of this statute, pages 228, 229, there is provision, in effect, for a determination by the state engineer of the quantity of water which can be diverted and conducted to the place of intended use, and a determination of the lands, by giving a description of them for which water is made available by such works. If the determination of the availability of the waters of the lands is to involve a determination of the right of such lands to such waters, third persons would be affected by such a determination. The water would not be available for such lands unless there were rights to the use of such water for such lands, and it is therefore a provision for a determination

of the physical and legal availability of water for such lands. This provision is unconditional, for each of the following reasons, to wit: 1. Because it vests judicial power in the state engineer in violation of section 2 of article 5 of the constitution. (*Thorp v. Freed*, 1 Mont. 657; *Fitch v. Board of Auditors*, 133 Mich. 178, 94 N. W. 952; *Davidson v. Johnson*, 113 Ky. 202, 67 S. W. 996; *Pratt v. Breckenridge*, 112 Ky. 1, 65 S. W. 136; *People v. Chase*, 165 Ill. 527, 46 N. E. 454, 36 L. R. A. 105; *People v. Simon*, 176 Ill. 165, 68 Am. St. Rep. 175, 52 N. E. 910, 44 L. R. A. 801; *State v. Gerry*, 68 N. H. 495, 38 Atl. 272, 278 et seq., 38 L. R. A. 228; *Arkle v. Board of Commrs.*, 41 W. Va. 471, 23 S. E. 804; *State v. Guilbert*, 56 Ohio St. 575, 60 Am. St. Rep. 756, 47 N. E. 551, 38 L. R. A. 519; *Risser v. Hoyt*, 3 Mich. 185, 18 N. W. 611.) 2. Because even if such judicial power is lawfully vested in the state engineer, the exercise of it, as provided, is unconstitutional. (*State v. Guilbert*, 56 Ohio St. 575, 60 Am. St. Rep. 756, 47 N. E. 551, 38 L. R. A. 579; *People v. Simon*, 176 Ill. 165, 68 Am. St. Rep. 175, 52 N. E. 910, 44 L. R. A. 801, approving *State v. Guilbert; Brown v. Board*, 50 Miss. 468; *Tyler v. Judges of the Court of Registration*, 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433; *Webster v. Reid*, 11 How. 437, 13 L. ed. 761; *Reed v. Wright*, 2 Greene (Iowa), 15.) 3. Because it violates section 26 of article 5 of the constitution of Idaho, providing that all laws relating to courts shall be of general and uniform operation, and the organized judicial powers, proceedings and practices of all courts of the same class or grade shall be uniform. (Art. 3, sec. 19, subd. 3.) The provisions for service by publication in this case is not uniform with the provision for service in other classes of cases to quiet title or determine adverse interests. The same provisions are violated by provision authorizing suits to quiet title by a public official who is not the real party in interest. The same provisions are also violated by sections 34 to 37, in that they provide a special proceeding to quiet title to water rights only on streams where decrees have been previously entered. (*Cullen v. Glendora Water Co.*, 113 Cal. 503, 39 Pac. 769.) This statute provides for the several counties paying attorneys' fees of counsel employed by the water commissioners in

violation of section 6 of article 18 of the constitution. These statutory provisions impose the liability for these items of expense upon the counties, and impose upon them the duty of. raising taxes for the payment thereof in violation of section 6 of article 7 of the constitution. (*Knox v. Board of Supervisors of Los Angeles County,* 58 Cal. 59; *State v. Barnes,* 24 Fla. 29,. 3 South. 433.) The statute is unconstitutional, in that in sections 29 and 35 thereof it was provided that the county shall pay, and there shall be assessed against lands, the amount of the claims of the water-master and commissioners as certified by them, without any discretion on the part of the commissioners. of the county or the land owners, and without any time provided for a hearing of the question of the correctness and justness of the accounts. Such legislation is invalid. (*People v. Houston,* 54 Cal. 536; *Felix v. Board of Commrs.,* 62 Kan. 832, 84 Am. St. Rep. 424, 62 Pac. 667; *State v. Mayor,* 72 Mo. 639; *Church v. Town of South Kingston,* 22 R. I. 381, 48 Atl. 3, 53 L. R. A.. 739.) Section 36 deprives parties of control without due process and violates section 13 of article 5 of Idaho constitution. Statute finds no justification in police power. States cannot under police power institute suits to quiet titles in order to encourage improvement and settlement of country. (*Reed v. Wright,* 2 Greene (Iowa), 15; *Trega v. Board of Directors of Modesto Irr. Dist.,* 164 U. S. 179, 17 Sup. Ct. Rep. 52, 41 L. ed. 395.) The legislature, though having power to provide what shall be *prima facie* evidence, has not authority to declare what shall be conclusive evidence. (Tiedeman on State and Federal Control.) Police power is limited to health, safety, public peace, etc. Encouragements to development of public resources is the power of eminent domain. Section 14, article 1, Idaho constitution, which is exercised only on compensation..

N. M. Ruick and Standrod & Terrell, for Defendant.

Costs and expenses of litigation to the county not a party to .this action and not interested therein: So far as this phase of .the question is concerned, we do not deem it of much importance, and merely call attention to the fact that if the law in question can be held to deal with a proper subject of legislation

and falls within the police power of the state (which we think is beyond question), then the costs imposed upon the county by reason of the litigation is in no wise dissimilar to other costs which are made a county charge in the enforcement of the police statutes of the state. Determining the rights of parties without due process of law: Due process of law does not necessarily require that a person whose property is sought to be affected should have personal notice of the proceeding. The notice may be actual or constructive, and it is sufficient if a notice be provided by which it is reasonable to believe that the person who is affected be apprised of the proceeding against him. (10 Am. & Eng. Ency. of Law, p. 299; *Gilchrist v. Schmidling,* 12 Kan. 263; *Happy v. Mosher,* 48 N. Y. 318.) This is an action *in rem.* It is dealing with a tangible *res,* and in such cases a proceeding may be instituted and carried to judgment without personal service upon claimants within the state. (*Pennoyer v. Neff,* 95 U. S. 714, 24 L. ed. 565; Freeman on Judgments, 4th ed., secs. 606-611; Black on Judgments, 792, 784, 795.) But we claim that the question of due process of law has no application to the statute involved here. We are fully convinced that the question involved is one purely of police power, and if we are correct in our conclusion, then neither the fourteenth amendment to the constitution of the United States nor section 13 of the Declaration of Rights of the constitution of Idaho is involved. These prohibitions do not impose any restraint upon the exercise of police power of the state in cases where the police power is properly involved. (10 Am. & Eng. Ency. of Law, 307; *Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. Rep. 357, 28 L. ed. 923; *Sifers v. Johnson,* 7 Idaho, 798, 97 Am. St. Rep. 271, 65 Pac. 709; *Sweet v. Balentine,* 8 Idaho, 431, 69 Pac. 995.)

SULLIVAN, C. J.—This is an application for a writ of prohibition to the judge of the fifth judicial district of the state of Idaho. The writ is sought to prohibit the judge of said court from further proceedings in an action pending in Bear Lake county, wherein one Edward J. Turner, as water commissioner for the first district of Idaho, is plaintiff, and.

all claimants to the use of water of a certain creek known as Dairy Canyon creek, situated in said county, were defendants, none of which defendants are named in said action. The petition or affidavit for said writ sets forth, among other facts, that the said Edward J. Turner is the duly appointed, qualified and acting water commissioner of said water division No. 1 of the state of Idaho; that under and by virtue of an act of the legislature of the state of Idaho, entitled "An act to regulate the appropriation and diversion of the public waters and to establish rights to the use of such waters and the priority of such rights," approved March 11, 1903, the said water commissioner, as plaintiff, did, on or about the fifteenth day of June, 1903, commence in the district court of the fifth judicial district, in and for Bear Lake county, said action. It is also alleged in said affidavit that said suit was brought for the purpose of quieting title to the right to the use of the waters of said stream among the claimants thereof; that said Turner, as such water commissioner, in order to bring and prosecute said action and to carry out and enforce the provisions of the act aforesaid, did, under the powers therein conferred, employ as his attorneys therein, D. W. Standrod and Thomas F. Terrell, Esqs., that said Turner, as water commissioner, caused to be published in the "Paris Post," a weekly newspaper published at Paris, Bear Lake county, Idaho, a notice of the nature and pendency of said action in the manner and form and for the time required by said act, and after due return of said notice and proof of publication thereof in said court, said action was placed upon the calendar of said court for trial, and the same was set for trial on the thirtieth day of October, 1903. It is further alleged that under the provisions of said act and by the bringing of the action aforesaid, heavy costs and attorneys' fees are sought to be charged against said county of Bear Lake, and that the same will be charged against said county and judgment rendered against it for such costs and fees if said action is permitted to be tried by said court; that such costs consist of clerks' fees, attorneys' fees, charges for the publication of the notice aforesaid, and other fees necessarily incidental to the trial of said action; it is also alleged that said act of the legis-

lature is unconstitutional and void, and confers no power upon said district court to hear said cause, and that said court is without jurisdiction to hear and determine the same, for the reason that said act seeks to have determined by judicial decision the rights of claimants in and to the waters of said creek without due process of law, and imposes costs and expenses of the litigation involved in said action upon Bear Lake county, which county is not a party to said action and is nowise interested therein. And, after stating other facts, the affiant prays for the issuance of said writ of prohibition against the defendant.

Upon the presentation of said petition or affidavit, the court issued the alternative writ of prohibition, to which writ the said judge, by his counsel, filed a general demurrer, thus admitting that the allegations of said petition were true.

The question submitted for decision involves the constitutionality of the act above referred to, and particularly that part of said act which authorizes the bringing of said action. (See Sess. Laws 1903, p. 223.) Said act is divided into forty-two sections, and by its varied provisions it is sought to regulate the appropriation and diversion of the public waters of the state and to establish rights to the use thereof and the priority of such rights. The constitutionality of said entire act is questioned on numerous grounds by counsel for plaintiff. But the court has concluded that the question presented by the petition, and the only one in which the plaintiff county is interested, can be disposed of by passing upon the sections of said act that authorize the bringing and maintenance of suits, like the one now pending before the defendant judge, and to prevent the trial of which the writ of prohibition is sought in this proceeding. Said sections are numbered 34, 35 and 36, inclusive, and may be stricken from said act, and leave the remaining part of said act a complete and operative act; and we shall not in this opinion pass upon the constitutionality of any part of said act except the three sections above numbered. We shall consider three questions as follows: 1. The sufficiency of the service of summons as provided by said section 34; 2. The provisions of section 35 requiring the costs and disburse-

ments incurred in the prosecution of said suit and attorneys' fees to be paid, in the first instance, by the county; and 3. Whether the provisions of said three sections come within the police powers of the state. Then (1) as to the provisions of said section 34 authorizing the service of summons by publication thereof. Said section is as follows:

"Sec. 34. In cases where the waters of any stream used for irrigation, domestic or milling purposes have, by a decree of a court of competent jurisdiction, been adjudicated and allotted, it is hereby made the duty of the water commissioner of the district in which such stream is situated, within three months after the taking effect of this act, to forthwith institute an action in the district court of the county wherein such decree was entered and recorded, and if in more than one county, then in the county to be selected by such water commissioner, against any and all persons claiming a right to the use of the waters of said stream or streams, or either of them, for purposes of irrigation, or for domestic or other purposes, and which persons shall not, for any reason, have been included in, or his right shall not have been settled and adjudicated by said decree, and against each and every party to said decree who shall claim or assert any right in addition, or of a date subsequent to the date of such decree. In entitling said action, it shall be sufficient to refer to the defendants as 'all claimants of a right to the use of the water of . . . . (giving the name of the stream as given in said decree) whose rights have not yet been adjudicated.' Service of summons upon said parties shall be by publication in a newspaper of general circulation published in the county where such decree is entered and through which said stream flows, and if in more than one county, then in some newspaper of general circulation published in each of said counties, in the same manner and for the same length of time as is now provided for publication of summons out of the district court, except that no affidavit to obtain order for publication of said summons, and no order for the publication of the same shall be required, and the affidavit of the publisher, proprietor, business manager or editor of such newspaper that such summons has been duly published in such newspaper at

. least once a week for a period of not less than one month, shall be conclusive evidence of such publication and of due service of said summons upon each and every of the defendants."

It is contended that the service of summons as provided by said act is unconstitutional and void, and does not give the court jurisdiction of the defendants, and would result in depriving a person of property without due process of law in contravention of the state and federal constitutions, and that said provision for the service of summons by publication is not uniform with the provisions of the statute of the state for service of summons in other actions.

The state as well as the federal constitution prohibits the deprivation of private property without due process of law. They contemplate reasonable service of summons upon all defendants. And reasonable service of summons is actual service upon all known defendants who reside in and can be found in the county when the suit is brought; and we think it requires personal service upon all known defendants residing within the state if such defendants can be found therein. The act in question does not require the defendants to be named in the complaint, and in the case pending before the defendant, judge, the defendants in that suit are designated as follows: "All claimants to the right to the use of water of Dairy Canyon creek whose rights have not yet been adjudicated." The summons in said action designates the defendants in the same manner and does not contain the name of any defendant and provides for constructive service thereof without any showing whatever for its necessity. No doubt personal service might be had upon many of the defendants, if not all of them, in the county, where such suit is pending or through which the decreed stream runs. We know of no precedent for service of summons as provided in this act where the title to property is directly involved between private individuals.

We are not without authority on this question. In *State v. Guilbert,* 56 Ohio St. 575, 60 Am. St. Rep. 756, 47 N. E. . 551, 38 L. R. A. 519, it is held that "The remedy by due course of law guaranteed by section 16 of the Bill of Rights extends to all the adversary rights of persons in property, and requires

that, before there is a judicial determination affecting such right, process to obtain jurisdiction of the person claiming it shall be issued and served, except that the legislature may provide for a substituted or constructive service to be made when actual service is impracticable." The above doctrine was approved by the supreme court of Illinois in *People v. Simon,* 176 Ill. 165, 68 Am. St. Rep. 175, 52 N. E. 910, 44 L. R. A. 801.

The former case arose under an act to provide for the registration of land titles. By the provisions of that act one known to claim the title in fee need not be named in the application nor receive a copy of the notice though his place of residence was within the county and known. As to him the only requirement was that he might have a chance to see a notice signed by the applicant addressed "To whom it may concern." After stating the above facts, among others, the court then propounded the following question: "Is it such notice as the law of the land requires to be given to persons claiming interests in property of the pendency of a judicial proceeding, in which such interests are to be the subject of adjudication and in which unless they appear a decree will be entered precluding their further assertion?" The court then proceeds to answer that question as follows:

"It is said that it is because the proceeding to register land under the act is *in rem.* Whether it is *in rem* or *in personam* is determined by its nature and purpose. To say that the legislature may prescribe such notice as is appropriate to proceedings *in rem,* and thus invest the proceeding with that character, is to affirm its power to annul the constitutional requirement. In this aspect of the case, and considering the effect of registration upon interests adverse to those of the applicant, the proceeding to register does not, in any substantial respect, differ from a suit *quia timet* to settle title. It bears the least possible analogy to a proceeding *in rem.* The *res* is not taken into the possession of an officer of the court. No charge or lien is asserted against it. It is not to be sold with a view to the distribution of its proceeds, and partakes, therefore, less of the nature of a proceeding *in rem* than does the foreclosure of a mortgage."

In *Brown v. Board,* 50 Miss. 468, the court held that the provision of the Bill of Rights "that no person shall be deprived of life, liberty or property without due process of law," inhibits the legislature from dispensing with personal service, where it is practicable, and has been usual under the general law.

In *Tyler v. Judges,* 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433 (which was a proceeding for a writ of prohibition and involved the registration laws of that state), referring to the service of notice, the court said: "It would hardly be denied that the statute takes great precautions to discover outstanding claims, as we have already shown in detail, or that notice by publication is sufficient with regard to claimants outside the state. With regard to claimants living within the state, and remaining undiscovered, notice by publication must suffice, of necessity."

It cannot be said that the section under consideration takes great precaution to discover the unnamed defendants residing in the county where the suit is pending. It fails to require the personal service of summons on known defendants residing in such county, and is in conflict with those provisions of our state constitution as well as the constitution of the United States which provide that no person shall be deprived of life, liberty or property except by due process of law. Those provisions prohibit the legislature from dispensing with the personal service of summons when it is practicable. That is required to give courts jurisdiction under the general laws of the state in regard to procedure in suits brought to quiet title or to settle adverse rights.

This act, so far as actions are concerned, proceeds upon the hypothesis that it is necessary for a public officer to go into court and ascertain and settle titles to water rights between private parties, whether the private owners desire to have them settled or not. And said act provides that the court shall obtain jurisdiction of the persons and property of such private owners without naming them in the complaint or summons, and without personal service thereof, even though their names and residences are known and they reside in the county where such

action is pending and when personal service of summons may be readily and easily made. It thus establishes a different rule for the service of summons than exists for the service of summons when the suit is brought by one of the private owners against others claiming rights to the use of water from the same stream, and for that reason is a special law for special cases.

The court is authorized, by said act, to procure jurisdiction of the person and to settle by judgment and decree valuable property rights; not by due process of law; not by service of summons as provided by the general law of the state for the service thereof which operates alike upon all citizens of the state and others desiring to have their titles quieted, but by a special, limited and constructive service that is not permitted by the general law of the state. Of course if defendants are in reality unknown, or if known and reside outside of or cannot be found, within the state, publication of summons must, of necessity, be sufficient as provided by our statutes. But in such cases when the name and postoffice address of the defendant is known, a copy of the summons and complaint must be sent to him by mail.

If the power assumed by the legislature in the provisions of this act in regard to the service of summons be sustained by this court, it would lead to most fearful results, as it would enable them by special and limited law to settle controversies over titles to private property and to take the property of one person against his consent and give it to another. Whatever the legislature may have concluded the exigencies that required the passage of said sections of said act to settle the conflicting claims of private individuals to the use of certain water, it had no right under said provisions of our constitution to pass a special and limited act confined to a particular class of individuals or case by which they could be deprived of their property in the way provided by said sections. The individual owners of water rights can only be devested of them by judicial proceedings which proceed according to the course of the general law of this state for settling such rights and titles.

We know that requirements less rigid than those above in-

dicated may be found in cases of taxation and eminent domain, but we know of no precedent for such a notice as is provided in said act where the title to property is directly involved, and the object and purpose of the suit is to quiet titles and settle conflicting private claims to private property.

Said provisions for the service of summons clearly violate the provisions of section 26, article 5 of our state constitution, which provides that all laws relating to courts shall be general and of uniform operation throughout the state and the organized judicial powers, proceedings and practices of all the courts of the same class or grade shall be uniform. And is in violation of the provisions of paragraph 4 of section 19 of article 3 of our constitution, which prohibits special or local legislation regulating practice of courts of justice. We have a general law providing how a summons must be served in cases to quiet title or determine adverse interests to private property, and the provisions therefor in the act under consideration provides a different method in cases brought by a water commissioner for that purpose. Said provisions also violate the provisions of our statute which require suits to be brought in the name of the real party in interest. The water commissioner, a public official, is not the real party in interest in a suit to quiet title or to determine adverse interest in property not claimed by or belonging to him, or the state.

As to the constitutionality of the provision requiring the county to pay costs, disbursements and attorneys' fees incurred in the prosecution of such suits: Section 35 of said act provides for the payment of such costs, disbursements and attorneys' fees and is as follows:

"Sec. 35. Upon the filing of the said complaint by the said water commissioner, any person or persons, parties to said decree or claiming any right or rights thereunder, may appear by complaint in intervention, or answer, and contest the right of any or all of the parties defendant in said action to use the waters of said stream or any part or portion thereof, and the proceedings henceforth shall be conducted in the same manner as actions for the adjudication of water rights upon the streams of this state, and the decree rendered in said action shall be

deemed a part of and supplementary to the original decree, to be enforced in the same manner. The costs and disbursements incurred by said water commissioner in the prosecution of said action, including a reasonable attorney's fee to be allowed by the court, shall be included in the sworn statement provided by law to be filed by the water commissioner with the auditor and recorder of the county or counties through or into which said stream or streams shall flow, and shall be apportioned, collected and paid in the same manner as the expenses of water-master and his deputies are apportioned, collected and paid, and the same shall constitute a lien upon real estate in the same manner and to the same extent as such expenses of the water-master and his deputies."

Said section provides that such costs, disbursements and attorneys' fees shall be included in the sworn statement provided by law to be filed by the water commissioner with the auditor, and shall be apportioned, collected and paid in the same manner as the expenses of water-masters are paid, and that the same shall constitute a lien upon real estate, etc.

In order to ascertain how water-masters' expenses are paid, we must turn to sections 29 and 30 of said act, and there we find that they are paid out of the general expense fund of the county upon the sworn statement of the water-master, verified by the water commissioner, upon which the board of county commissioners shall order a warrant to be issued to the water-master.

We do not think the legislature has the authority to compel by legislation a county to pay the costs, disbursements and attorneys' fees in a suit to settle and adjudicate the private rights of persons in and to the use of waters appropriated under the laws of this state. But it is contended by counsel for defendant that the question of due process of law has no application to the act here involved; that the question is one purely of police power; and that being true, neither the fourteenth amendment of the federal constitution nor section 13, article 1 of the Declaration of Rights of the Idaho constitution has any application; that said prohibitions do not impose any restraint upon the exercise of police power of the state in cases where such power

is properly invoked. We cannot consent to that contention of counsel. While it is a part of the history of this state that crimes have been committed in personal contests between claimants to the right to the use of water, that fact is not sufficient to authorize the state under the police powers to settle the rights of conflicting claimants to private property in a suit brought by a public official and on the service of the notice or summons by publication upon known defendants residing in the county where such suit is brought and pending.

There is no doubt that the legislature has power to regulate, to a certain extent, the use of private property under what is denominated the police power of the state. But under the act in question it has attempted to go beyond its legitimate police power and sought to determine private rights to private property, without due process of law, which it is prohibited from doing by the fourteenth amendment of the federal constitution, and that provision of our state constitution which provides that no person shall be deprived of life, liberty or property except by due process of law. If we were to concede that said provisions were intended as a police regulation, that would not permit the settlement of adverse interest or titles to private property without reasonable notice to the parties interested.

For the reasons above given, said sections 34, 35 and 36 of said act are unconstitutional and void, and the court declines to pass upon the constitutionality of any other sections or provisions of said act, for the reason it is not necessary to do so in order to decide all questions raised by the pleadings in which Bear Lake county is directly interested.

The peremptory writ of prohibition is granted and directed to issue as prayed for in the petition.

Stockslager and Ailshie, JJ., concur.