## IN THE

# SUPREME COURT

### OF THE

## STATE OF IDAHO.

---

(March 18, 1916.)

MARSH MINING COMPANY, a Corporation, Respondent, v. INLAND EMPIRE MINING & MILLING COMPANY, a Corporation, Appellant.

[165 Pac. 1128.]

EMINENT DOMAIN—REASONABLE NECESSITY—PROPERTY ALREADY DEVOTED TO PUBLIC USE—MORE NECESSARY PUBLIC USE—MINES AND MINING PURPOSES.

1. If a reasonable although not an absolute necessity exists to take private property for a public use, the power of eminent domain may be invoked.

2. Property devoted to or held for a public use is subject to the power of eminent domain if the right to so take it is given by constitutional provision or legislative enactment, in express terms or by clear implication, but it cannot be taken to be used in the same manner and for the same purpose to which it is already being applied or for which it is, in good faith, being held, if by so doing that purpose will be defeated.

3. The theory upon which the power of eminent domain is extended in aid of the mining industry is that public benefit will result from the application of private property to public use. It was not the intention of the framers of the constitution, nor of the legislature, that this power be so invoked that the mine will be developed and thereby another be destroyed, nor that one mine owner be enriched and another improverished. The aid of eminent domain is extended to the industry, not to the individual.

4. Chapter 3, title 8, of the Civil Code points out the occasions when, the conditions under which and the methods and agencies whereby the use of mining property may be appropriated in aid of the mining industry and, the purposes for which it may be so

appropriated having been specified, it follows that, unless it is being applied by its owner to or in good faith held for the same or a more necessary public use which will be defeated or seriously interfered with thereby, it may be taken in aid of that industry, under the power of eminent domain, for one or more of those designated purposes and none other.

[As to condemnation of mining property under point of eminent domain, see note in **Ann. Cas.** 1912D, 1002.]

APPEAL from the District Court of the the First Judicial District, for Shoshone County. Hon. John M. Flynn, Presiding Judge.

Action to condemn a portion of a patented mining claim for mining purposes. Judgment for plaintiff. *Reversed.*

Chas. E. Miller and I. N. Smith, for Appellant.

Where property is sought to be taken by condemnation, if upon the hearing there is a total lack of competent evidence, or none at all, to prove the existence of the public necessity for the taking, and a taking is decreed, such decision and decree operate to take the defendant's property without due process of law and in violation of the fourteenth amendment of the federal constitution. (*State of Washington ex rel. Oregon R. & Nav. Co. v. Fairchild,* 224 U. S. 510, 32 Sup. Ct. 535, 56 L. ed. 863.)

The evidence fails to establish a necessity for the taking of the property sought to be condemned. (*Scranton Gas & Water Co. v. Northern Coal & Iron Co.,* 192 Pa. St. 80, 73 Am. St. 798, 43 Atl. 470.)

Property once appropriated to a public use cannot be taken unless for a more necessary public use than that to which it has been already appropriated. (*Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 18 Ann. Cas. 674, 100 Pac. 1046; *State ex rel. Harbor Boom Co. v. Superior Court,* 65 Wash. 129, 117 Pac. 755; *Samish River Boom Co. v. Union Boom Co.,* 32 Wash. 586, 73 Pac. 670; *State ex rel. Skamania Boom Co. v. Superior Court,* 47 Wash. 166, 91 Pac. 637; *Boston & M. R. R. v. Lowell & L. R. Co.,* 124 Mass. 368; *Housatonic R. Co. v. Lee & H. R.*

*Co.*, 118 Mass. 391; *Baltimore & Ohio & Chicago R. Co. v. North*, 103 Ind. 486, 3 N. E. 144; *Pittsburgh Junction R. Co.'s Appeal*, 122 Pa. St. 511, 9 Am. St. 128, 6 Atl. 564; *St. Paul Union Depot Co. v. City of St. Paul*, 30 Minn. 359, 363, 15 N. W. 684; *Barre R. Co. v. Montpelier & W. R. R. Co.*, 61 Vt. 1, 15 Am. St. 877, 17 Atl. 923, 4 L. R. A. 785; *In re City of Buffalo*, 68 N. Y. 167; *In re New York, L. & W. Ry. Co.*, 99 N. Y. 12, 23, 1 N. E. 27; *Birmingham & A. A. R. Co. v. Louisville & N. R. Co.*, 152 Ala. 422, 44 So. 679; *St. Louis I. M. & S. R. Co. v. Memphis D. & G. R. Co.*, 102 Ark. 492, 143 S. W. 107; *Reclamation Dist. v. Superior Court*, 151 Cal. 263, 90 Pac. 545; *Chicago & N. W. Ry. Co. v. Chicago & E. R. Co.*, 112 Ill. 589; *Steele v. Empson*, 142 Ind. 397, 41 N. E. 822; *Chicago R. I. & P. Ry. Co. v. Williams*, 148 Fed. 442; *St. Louis H. & K. C. Ry. Co. v. Hannibal Union Depot Co.*, 125 Mo. 82, 28 S. W. 483; *Paterson & R. R. Co. v. City of Paterson*, 81 N. J. L. 75, 80 Atl. 937; *Miller v. Cincinnati L. & A. Elec. St. R. Co.*, 43 Ind. App. 540, 88 N. E. 102; *New York Central & H. R. R. Co. v. City of Buffalo*, 200 N. Y. 113, 93 N. E. 520; *St. Louis & S. F. R. Co. v. City of Tulsa*, 213 Fed. 87; *Oregon-Wash. R. & Nav. Co. v. Castner*, 66 Or. 580, 135 Pac. 174; *Ruthland Ry., L. & P. Co. v. Clarendon Power Co.*, 86 Vt. 45, 83 Atl. 332, 44 L. R. A., N. S., 1204; *Kanawha Central R. Co. v. Brown*, 71 W. Va. 738, 77 S. E. 360.)

"Two conditions must concur in order to authorize such taking.   There must be some necessity therefor on the part of the condemnor, and the taking must not destroy or seriously impede the use to which the property is already devoted."   (Lewis on Eminent Domain, 3d ed., sec. 440, p. 796; *Oregon Short Line R. Co. v. Postal Tel. Cable Co.*, 111 Fed. 842, 49 C. C. A. 663; *Portland Ry., L. & Power Co. v. City of Portland*, 181 Fed. 632, 633; *Pacific Postal Telegraph-Cable Co. v. Oregon & Cal. R. Co.*, 163 Fed. 967; *Little Miami etc. R. Co. v. City of Dayton*, 23 Ohio St. 510; *City of Ft. Wayne v. Lake Shore & M. S. Ry. Co.*, 132 Ind. 558, 32 Am. St. 277, 32 N. E. 215, 18 L. R. A. 367; *Baltimore & O. S. W. Ry. Co.*

*v. Board of Commrs.,* 156 Ind. 260, 58 N. E. 837, 59 N. E. 856.)

The grant in sec. 5210, Rev. Codes, of the right to condemn for "an occupancy in common by the owners or possessors of different mines of any place for the flow, deposit or conduct of tailings or refuse matter from their several mines," and the grant in sec. 3224 of the right of condemnation of an easement over and upon mining lands for purposes therein enumerated, excludes the implication of a grant of power for any other purpose. (*Scranton Gas & Water Co. v. Northern Coal & Iron Co.,* 192 Pa. St. 80, 73 Am. St. 798, 43 Atl. 470; *Fayetteville Street Ry. v. Aberdeen & R. R. Co.,* 142 N. C. 423, 9 Ann. Cas. 683, 55 S. E. 345; *Southern Ry. Co. v. Memphis,* 126 Tenn. 267, Ann. Cas. 1913E, 153, 148 S. W. 662; 41 L. R. A., N. S., 828.) It is immaterial that appellant has not yet reached the point in its development where all of this land is required for immediate use. (*Kansas City S. & G. Ry. Co. v. Vicksburg S. & P. Ry. Co.,* 49 La. Ann. 29, 21 So. 144.)

John P. Gray and Therrett Towles, for Respondent.

The constitution has declared that the necessary use of lands for mining uses is a public use, and the legislature has provided the procedure for subjecting such lands as are necessary for such use thereto. The constitution in this particular is self-executing. (*Washington Water Power Co. v. Waters,* 19 Ida. 595, 115 Pac. 682; *Potlatch Lumber Co. v. Peterson,* 12 Ida. 769, 118 Am. St. 233, 88 Pac. 426; *Washington Water Power Co. v. Waters,* 186 Fed. 572; *Lamborn v. Bell,* 18 Colo. 346, 32 Pac. 989, 20 L. R. A. 241; *Spratt v. Helena Power Trans. Co.,* 37 Mont. 60, 94 Pac. 631.)

Sec. 14, art. 1, is a limitation of power upon the legislature and not a grant of power. (*Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 18 Ann. Cas. 674, 100 Pac. 1046.)

"The legislature, neither by neglect to act nor by legislation, can nullify a mandatory provision of the constitution." (*Day v. Day,* 12 Ida. 556, 10 Ann. Cas. 260, 86 Pac. 531; *Davis v. Burke,* 179 U. S. 399, 21 Sup. Ct. 210, 45 L. ed. 249.)

That such a use is a public use is firmly settled.   (*Strickley v. Highland Boy Gold Min. Co.*, 200 U. S. 527, 4 Ann. Cas. 1174, 26 Sup. Ct. 301, 50 L. ed. 581; *Douglass v. Byrnes*, 59 Fed. 29; *Dayton Gold & Silver Min. Co. v. Seawell*, 11 Nev. 394; *Overman Silver Min. Co. v. Corcoran*, 15 Nev. 147; *Clark v. Nash*, 198 U. S. 361, 4 Ann. Cas. 1171, 25 Sup. Ct. 676, 49 L. ed. 1085; *Hand Gold Min. Co. v. Parker*, 59 Ga. 419; *Baillie v. Larson*, 138 Fed. 177; *Butte A. & P. Ry. Co. v. Montana Union Ry. Co.*, 16 Mont. 504, 50 Am. St. 508, 41 Pac. 232, 31 L. R. A. 298.)

Under the evidence there can be no doubt that the lands sought to be acquired are necessary for the purposes of the respondent.   There is no other available ground that the Marsh Mining Co. can acquire, and the ground which it has and the facilities which it has are entirely inadequate and insufficient.   (*Overman Silver Min. Co. v. Corcoran*, 15 Nev. 147.)

The use being a public use and the necessity existing, the peculiar character of the appellants' property does not preclude its condemnation.   (*Colorado Eastern R. Co. v. Union Pac. R. Co.*, 41 Fed. 293–300; 15 Cyc. 614, and cases cited; 2 Lewis on Eminent Domain, 3d ed., 754; *North Carolina etc. R. Co. v. Carolina Cent. Ry. Co.*, 83 N. C. 489; *Butte A. & P. Ry. Co. v. Montana Union Ry. Co.*, 16 Mont. 504, 50 Am. St. 508, 41 Pac. 232, 31 L. R. A. 298; *Seattle & M. R. Co. v. Bellingham Bay & E. R. Co.*, 29 Wash. 491, 92 Am. St. 907, 69 Pac. 1107; *Atchison T. & S. F. R. Co. v. Kansas City M. & O. Ry. Co.*, 67 Kan. 569, 70 Pac. 939–942, 73 Pac. 899; *St. Louis A. & T. H. R. Co. v. Belleville City Ry. Co.*, 158 Ill. 390, 41 N. E. 916; *Scranton Gas & Water Co. v. Delaware L. & W. R. Co.*, 225 Pa. St. 152, 73 Atl. 1097; *Atlanta & W. P. R. Co. v. Atlanta B. & A. R. Co.*, 124 Ga. 125, 52 S. E. 320; *Pansing v. Village of Miamsburg*, 79 Ohio St. 430, 87 N. E. 1139.)

MORGAN, J.—Respondent is the owner of certain mining claims known as the Marsh Group, situated in Leland Mining District, Shoshone county.   Appellant is the owner of a pat-

ented mining claim known as the Never Sweat Lode, which contains between eleven and twelve acres. The land embraced within the Marsh Group and all that embraced within the Never Sweat, except a small portion which is comparatively level, lying along a stream called Canyon Creek, is situated upon steep mountainsides. This action was commenced by respondent in order to acquire for mining purposes, under the power of eminent domain, the surface of approximately three and one-third acres of appellant's ground including all the level portion above mentioned. The level land sought to be condemned is occupied by certain persons who claim adversely to appellant by reason of occupancy, or otherwise, and who were made defendants in the action.

The record discloses that while the respondent has never paid a dividend, it has done a great deal of development work and has mined from its claims and marketed about $550,000 worth of ore; that it has discovered in said claims a valuable deposit of mineral; that in the development of its property its present facilities have become and are inadequate to meet its requirements, and that by reason of the topography of its ground it needs the level portion of appellant's land in order to facilitate its mining operations.

It is alleged in the complaint that respondent needs this land for the purposes of constructing a tramway thereon, for terminal facilities for tracks, ground for ore-bins, machine-shops, ore-sorting plant, sheds for timber, stull-yards, land for dumping waste rock and for other necessary mining uses and purposes in connection with the operation and development of its property.

The trial resulted in a judgment decreeing that the use to which respondent desires to put the land is a public use and awarding to it the right to condemn and appropriate said land under the power of eminent domain. This appeal is from the judgment.

Appellant contends that the acquisition of the property is a matter of convenience and economy, only, on the part of respondent, and that no such necessity exists therefor as warrants the exercise of the right of eminent domain. While the

record does not disclose that an absolute necessity exists for taking the land by respondent and does disclose that it may operate, to some extent, without it, we are convinced from a careful examination of the evidence that for the convenient and economical development and operation of its mine the use of the land is needed and that a reasonable necessity exists for the taking. If a reasonable, although not an absolute, necessity exists to take property for a public use, it is sufficient. (*City of Spokane v. Merriam*, 80 Wash. 222, 141 Pac. 358; *State ex rel. Skamania Boom Co. v. Superior Court*, 47 Wash. 166, 91 Pac. 637; *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670; *Bennett v. City of Marion*, 106 Iowa, 628, 76 N. W. 844; *Cincinnati etc. Ry. Co. v. City of Anderson*, 139 Ind. 490, 47 Am. St. 285, 38 N. E. 167; *Mobile & G. R. Co. v. Alabama etc. Ry. Co.*, 87 Ala. 501, 6 So. 404; *Butte A. & P. Ry. Co. v. Montana Union Ry. Co.*, 16 Mont. 504, 50 Am. St. 508, 41 Pac. 232, 31 L. R. A. 298.)

It appears that appellant and its predecessors have expended about $20,000 in the development of the Never Sweat claim; that while ore in paying quantities has never been discovered, some ore has been found and that appellant is still prospecting, in good faith, and expending its money in an effort to develop a mine, and also that if commercial ore in paying quantities is discovered in the Never Sweat claim, all the level ground sought to be condemned will be necessary to its owner in its development and operation for the same use to which respondent seeks to appropriate it. It further appears that the predecessors in interest of appellant, some years ago, used a portion of the level land in question for the purpose of piling or storing some mining timbers upon it and also dumped thereon a small quantity of waste rock, and that no use has been made of it since for mining purposes. That at about the time this use was made of the land an injunction, which is still in force, was served upon appellant's predecessors preventing such use of it, and that there is litigation now pending between appellant and others which has grown out of adverse claims to surface rights to the land.

Appellant contends, and the record discloses, that the property is owned and held by it for the same public use and purpose to which respondent desires to put it, to .wit, mining purposes, and it insists that if it is deprived of this land, the development of the remaining portion of its property may as well cease, since without the level land the successful operation of its mine will be impossible.

Property devoted to, or held for, a public use is subject to the power of eminent domain if the right to so take it is given by constitutional provision or legislative enactment, in express terms or by clear implication, but it cannot be taken to be used in the same manner and for the same purpose to which it is already being applied or for which it is, in good faith, being held, if by so doing that purpose will be defeated. (Lewis on Eminent Domain, 3d ed., sec. 440; *State ex rel. Skamania Boom Co. v. Superior Court, supra; Samish River Boom Co. v. Union Boom Co., supra; State ex rel. Harbor Boom Co. v. Superior Court,* 65 Wash. 129, 117 Pac. 755; *Atchison, T. & S. F. R. Co. v. Kansas City M. & O. R. Co.,* 67 Kan. 569, 70 Pac. 939, 73 Pac. 899; *Southern Pac. R. Co. v. Southern Cal. Ry. Co.,* 111 Cal. 221, 43 Pac. 602; *Cary Library v. Bliss,* 151 Mass. 364, 25 N. E. 92, 7 L. R. A. 765; *Northwestern Tel. Exch. Co. v. Chicago, M. & St. P. Ry. Co.,* 76 Minn. 334, 79 N. W. 315; *Oregon Short Line R. Co. v. Postal Tel. Cable Co.,* 111 Fed. 842, 49 C. C. A. 663; *Little Miami & C. & X. R. Co. v. City of Dayton,* 23 Ohio St. 510.)

An examination of the constitution and statutes of Idaho discloses that authority has not been granted, either expressly or by implication, to take, under the power of eminent domain, property already devoted to mining purposes for some of the uses to which it is sought to put the property of appellant. Sec. 14, art. 1 of the constitution provides: "The .necessary use of lands . . . . for the drainage of mines, or the working thereof, by means of roads, railroads, tramways, cuts, tunnels, shafts, hoisting works, dumps or other necessary means to their complete development . . . . is hereby declared to be a public use, and subject to the regulation and control of the state."

It will be observed that this section of the constitution provides that the necessary use of lands for certain mining purposes is a public use and is subject to the regulation and control of the state, but it must be remembered that the tract here in controversy is now held by appellant for those purposes, and the constitution makes no reference to the taking of property held for, or devoted to, a public use for the purpose of applying it to the same or any other use.

The supreme court of Massachusetts, in *Boston & Maine R. R. v. Lowell & Lawrence R. Co.*, 124 Mass. 368, said: "The general principle is well settled, and has been applied in a great variety of cases, that land already legally appropriated to a public use is not to be afterward taken for a like use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication." (*Baltimore & Ohio & Chicago R. Co. v. North,* 103 Ind. 486, 3 N. E. 144; *Atlanta etc. R. Co.* v. *Atlanta etc. R. Co.,* 124 Ga. 125, 52 S. E. 320; *In re City of Buffalo,* 68 N. Y. 167; *Portland Ry., Light & Power Co. v. City of Portland,* 181 Fed. 632.)

Sec. 5210, Rev. Codes, provides: "Subject to the provisions of this title, the right of eminent domain may be exercised in behalf of the following public uses: . . . . 4. Roads, tunnels, ditches, flumes, pipes and dumping places for working mines; also outlets, natural or otherwise, for the flow, deposit, or conduct of tailings or refuse matter for mines; also, an occupancy in common with the owners or possessors of different mines of any place for the flow, deposit or conduct of tailings or refuse matter from their several mines." It is provided in sec. 5212, Rev. Codes: "The private property which may be taken under this title includes: . . . . 3. Property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has been already appropriated"; and sec. 5213, provides: "Before property can be taken, it must appear: . . . . 3. If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."

It is true the respondent's mine is more fully developed than is that of appellant, and that the former corporation is, by reason of its discovery of commercial ore in paying quantities, operating upon a larger scale than is the latter, but this is not the test to be applied in construing the foregoing sections of the code.  This court said in case of *Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 18 Ann. Cas. 674, 100 Pac. 1046, as follows: "Certainly the fact that the proposed canal will irri gate 20,000 acres, while the plaintiff's canal only irri₂ac 2,500 acres, does not make it a more necessary public u ᴀᴠ. (*Cary Library v. Bliss,* 151 Mass. 364, 7 L. R. A. 765, 25 N. E. 92; *West River Bridge v. Dix,* 6 How. (47 U. S.) 507, 12 L. ed. 535; *Chicago & N. W. Ry. Co. v. Chicago & E. R. Co.,* 112 Ill. 589.)  In other words, the necessity is not measured by the extent to which the use is applied.  (*Butte A. & P. Ry. Co. v. Montana Union Ry. Co.,* 16 Mont. 504, 50 Am. St. 508, 41 Pac. 232, 31 L. R. A. 298; *Talbot v. Hudson,* 16 Gray (Mass.), 417; *Kettle River R. Co. v. Eastern Ry. Co.,* 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111; *Hibernia R. Co. v. De Camp,* 47 N. J. L. 518, 54 Am. Rep. 197, 4 Atl. 318.)"

The theory upon which eminent domain, a power inherent in the state, is extended in aid of the mining industry is that public benefit will result from the application of private property to public use.  The end sought to be attained is that mines be discovered, developed and operated, and that thereby the wealth of the state and the prosperity of its inhabitants be augmented.  The welfare of this state depends, largely, upon the development of its natural resources, and the discovery of mineral, in paying quantities, in an undeveloped mine is of as vital importance to it and to its present and future inhabitants as is the successful operation of a mine now developed.  It was not the intention of the framers of the constitution, nor of the legislature, that the power of eminent domain be so invoked that one mine will be developed and thereby another be destroyed, nor that one mine owner be enriched and another be impoverished.  The aid of eminent domain is extended to the industry, not to the individual.

Provision has been made whereby the owners of mines and mining claims, less advantageously located than those of others, cannot be excluded from their properties nor prevented from developing and operating them. Chap. 3, Title 8, of the Civil Code points out the occasions when, the conditions under which and the methods and agencies whereby the use of mining property may be appropriated in aid of the mining industry, and secs. 3223 and 3224 are as follows:

"3223. The owner, locator, or occupant of a mining claim, whether patented under the laws of the United States or held by location or possession, may have and acquire a right of way for ingress and egress, when necessary in working such mining claim, over and across the lands or mining claims of others, whether patented or otherwise.

"3224. When any mine or mining claim is so situated, that for a more convenient enjoyment of the same a road, railroad or tramway therefrom, or a ditch or canal to convey water thereto, or a ditch, flume, cut or tunnel to drain or convey the waters or tailings therefrom, or a tunnel or shaft, may be necessary for the better working thereof, which road, railroad, tramway, ditch, canal, flume, cut, shaft, or tunnel, may require the use or occupancy of lands or mining grounds, owned, occupied or possessed by others than the person or persons or body corporate, requiring an easement for any of the purposes described, the owner, claimant or occupant of the mine or mining claim first above mentioned, is entitled to a right of way, entry and possession for all the uses and privileges for such road, railroad, tramway, ditch, canal, flume, cut, shaft or tunnel, in, upon, through and across such other lands or mining claim, upon compliance with the provisions of this chapter."

The succeeding sections of chap. 3, title 8, of the code prescribe the procedure for acquiring such property by condemnation.

The purposes having been specified in secs. 3223 and 3224, *supra,* for which property dedicated to mining may be appropriated, it follows that, unless it is being applied by its owner to, or in good faith held for, the same or a more neces-

sary public use, which will be defeated or seriously interfered with thereby, it may be taken in aid of that industry under the power of eminent domain, for one or more of these designated purposes and none other.

In this case the trial court decreed "that it is necessary for the plaintiff to have the particular portions of said premises hereinafter described for the purpose of constructing, building and extending a tramway from the portal of the present Marsh adit tunnel to a point on the east side-line of the Never Sweat lode mining claim for the purpose of protecting said tramway and for the reasonable use thereof and of the works connected therewith, for tunnel facilities, for tracks and the extension of railroad tracks or in connection with railroad tracks across the same, for the construction of ore-bins, machine-shops, ore-sorting plant, sheds for timber, stull-yards, and land for other necessary mining uses and purposes in connection with the operation and development of the property of the plaintiff more fully set forth in the findings of fact." The decree then awards to respondent the right to have the land condemned for said purposes without designating any specific portion of it to be taken for any or either purpose. No allegation appears in the complaint that respondent requires any of appellant's land for tunnel facilities, nor does the record contain any evidence tending to support the portion of the decree relating to that use.

It is entirely clear that the law grants to respondent a right to condemn sufficient of appellant's land for an easement for a tramway and a railroad which, of course, contemplates the right to occupy sufficient ground to make the reasonable use thereof possible, and it is equally clear that there is no warrant of law for taking said property, or any part of it, for other purposes set out in the decree.

Since the portions of land necessary to be used for the purposes for which condemnation may be had have not been segregated and described separately from that which the trial court deemed necessary to be taken for purposes in behalf of which we have concluded the power of eminent domain cannot be invoked, it is impossible to modify the judg-

ment, and it must therefore be reversed, and it is so ordered. Costs are awarded to appellant.

Budge, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by the majority of the court. I am of the opinion that under the law and the facts the decision of the trial court ought to be affirmed and not modified in any respect. The findings of fact made by the trial court are fully supported by the evidence.

The majority opinion proceeds upon the theory that a mining claim is already devoted to a public use, regardless of whether the owner is working or using it or not. The majority opinion states: "But it must be remembered that the tract here in controversy is now held by appellant for those purposes and the constitution makes no reference to the taking of property held for, or devoted to, a public use for the purpose of applying it to the same or any other use."

The record clearly shows, as the trial court found, that said land was not devoted to a public use. It was not being used by the owner for any purpose. The authorities cited by the appellant do not support the proposition that if property is held for a "*prospective*" public use, even in good faith, although not applied to such use, it cannot be taken under the right of eminent domain.

In *State ex rel. Harbor Boom Co. v. Superior Court*, 65 Wash. 129, 117 Pac. 755, the court there quotes from the decision of *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670, as follows: "There can be no doubt that property held by a corporation simply as a proprietor may be taken for a public use by another corporation having the right of eminent domain." Simply because the appellant company owned the land sought to be condemned as a mining claim and held it for a prospective public use, does not protect it from being condemned for a public use upon proper application.

Counsel for appellant do not contend that their client wants the property sought to be condemned at the present time, but that it may need it at some future time for the proper development of its mine. It is well settled that the mere possibility that land sought to be taken may at some future time become necessary in the operations of the appellant company does not exempt it from condemnation. (See 15 Cyc., p. 614, and authorities there cited.)

It was held in the condemnation case of the *Colorado Eastern R. Co. v. Union Pac. R. Co.*, 41 Fed. 293, that both on reason and authority a mere prospective use of the defendant should yield to the more immediate necessities of the petitioner in that case. (See 2 Lewis on Eminent Domain, 3d ed., p. 754.)

Property of a *quasi*-public corporation not in use and not necessary for the exercise of its public franchises or discharge of its public duties may be taken under the general power to condemn property the same as though it belonged to a private individual. (2 Lewis on Eminent Domain, 3d ed., p. 799.)

The property sought to be condemned in this action is not being used by the defendant for any purpose whatever, and the mere prospective use of the defendant corporation, should be compelled to yield to the more immediate necessities of the plaintiff in this case.

The judgment of the district court ought to be affirmed.

(June 30, 1917.)

### ON REHEARING.

PER CURIAM.—A petition for rehearing was granted in this case, and it has been again fully submitted and considered.

The conclusion of the court is that it adheres to the former decision.